**THE MILLER FIRM, LLC**
Michael J. Miller (pro hac vice)
Brian K. Brake (pro hac vice)
Tayjes Shah (pro hac vice)
108 Railroad Ave
Orange, VA 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
bbrake@millerfirmllc.com
tshah@millerfirmllc.com

**AUDET & PARTNERS**
Mark Burton (CA Bar No. 178400)
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 568-2555
Fax: (415) 568-2556
mburton@audetlaw.com

*Attorneys for Plaintiffs*

**WILKINSON WALSH + ESKOVITZ LLP**
Brian L. Stekloff (pro hac vice)
Rakesh Kilaru (pro hac vice)
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847 4030
Fax: (202) 842 4005
bstekloff@wilkinsonwalsh.com
rkilaru@wilkinsonwalsh.com

**HOLLINGSWORTH LLP**
Joe G. Hollingsworth (pro hac vice)
Eric G. Lasker (pro hac vice)
1350 I Street, N.W
Tel: (202) 898 5800
Fax: (202) 682 1639
elasker@hollingsworthllp.com
jhollingsworth@hollingsworthllp.com

**ARNOLD & PORTER KAY SCHOLER**
Pamela Yates (CA Bar No. 137440)
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Tel: (213) 243 4178
Fax: (213) 243 4199
Pamela.Yates@arnoldporter.com

*Attorneys for Defendant*
*MONSANTO COMPANY*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Elaine Stevick and Christopher Stevick v. Monsanto Co.*, 3:16-cv-02341-VC | MDL No. 2741<br><br>Case No. 16-md-02741-VC |

- 1 -
JOINT CASE MANAGEMENT STATEMENT; 3-16-CV-02341-VC

**JOINT CASE MANAGEMENT STATEMENT**

The parties jointly submit this Joint Case Management statement in anticipation of the December 16, 2019, 10:00 a.m., Case Management Conference.

I.   **USE OF DR. PORTIER'S DEPOSITION FROM THE HARDEMAN CASE PURSUANT TO Fed. R. Civ. P. 32(a)(4)(B)**

A.   **Plaintiffs' Position**

Dr. Portier's testimony was admitted at trial by video deposition in the *Hardeman* case on February 27 and March 1, 2019. The Court spent considerable time and effort ruling on the parties' objections to the admissibility of Dr. Portier's testimony which resulted in the video clips played during the *Hardeman* trial. Plaintiffs, Elaine and Christopher Stevick seek to play the same video deposition during their trial as expressly authorized by Fed. R. Civ. 32(a)(4)(B) and the 9th Circuit.

Federal Rule 32(a)(4)(B) provides in part that "a party may use for any purpose the deposition of a witness, whether or not a party, if the Court finds . . . that the witness is more than 100 miles from the place of hearing or trial or is outside the United States. . . ." The parties agree that Dr. Portier resides in Switzerland. It is also not disputed that Monsanto was present at the taking of the deposition. See Fed. R. Civ. 32(a)(1) (at a hearing or trial all or part of a deposition may be used against a party if the party was present or represented at the taking of the deposition, to the extent it would be admissible under Federal Rules of Evidence if the deponent were present and testifying and the use is allowed by Rule 32(a)(4)).

Importantly, Rule 32(a)(4)(B) does not make an exception for expert witnesses; the Rule clearly states that the deposition of "a witness", whether or not a party, may be used under the prescribed circumstances. If the drafters of the Federal Rules intended the provision not to apply to expert witnesses, that exception would have been noted in the rule.

At least one California District Court has decided that the use of an expert deposition testimony is appropriate at trial under Rule 32(a)(4)(B), in accordance with controlling 9th

1  Circuit precedent.  In <u>Televisa, SA v. Univision Communications, Inc.,</u> 635 F. Supp. 2d 1106
2  (C.D. Cal 2009), the question before the Court was whether a designated expert for a party could
3  read the expert's deposition at trial.  After citing Rule 32, the Court held that since it was
4  undisputed that the expert lived and worked in New York and that the opposing party was
5  represented by Counsel during the deposition, that the deposition may be used at trial under a
6  plain reading of the Rule.  <u>Id</u>. at 1109.  The Court also held that the introduction of the expert's
7  deposition was  proper under Fed. R. Evid. 804(b)(1), which provides a hearsay exception for
8  deposition testimony given by an unavailable witness if the adverse party "had an opportunity
9  and similar motive to develop the testimony by direct, cross, or re-direct examination."  Citing
10 <u>Hangarter v. Provident Life and Accident Insurance Company</u>, 373 F.3d 998, 1019 (9th Cir.
11 2004) (court finds that qualified **expert** witness's residence in Alabama placed him outside of
12 the Court's subpoena power under Rule 45 and thus he was unavailable pursuant to Rule 32(a)
13 which permits deposition testimony where the witness is at a greater distance than 100 miles
14 from the place of trial or hearing).[1]

15  In fact, a witness was deemed "unavailable" even when the witness was two blocks away
16 from the courthouse and actively meeting with defense counsel to prepare for potential live
17 testimony up until two days before her testimony was proffered, but then returned to her
18 residence, which was greater than 100 miles from the courthouse.  <u>Phoenix Technologies Ltd.,</u>
19 <u>v. VM Ware, Inc.</u>, 2017 W.L. 8069609 (N.D. Cal. 2017) (Judge Haywood S. Gilliam, Jr.).

20  Accordingly, Plaintiffs move the Court to permit them to play Dr. Portier's expert
21 deposition as played in *Hardeman* in the *Stevick* matter.  In addition to being authorized by the
22 Federal Rules, the 9th Circuit, and at least one California District Court, doing so would conserve
23 the Court's resources and the resources of the parties.  At the same time, Monsanto will not be
24 prejudiced in that it had a full and fair opportunity to ask all questions it felt were relevant since

---

[1] Although the law on the admissibility of an unavailable expert deposition is clear in the 9th Circuit (<u>See</u> <u>Hangarter</u>), other Federal Courts are split on the issue.  <u>See</u> <u>Aubrey Rogers Agency, Inc., v AIG</u>, 2000 U.S. Dist. LEXIS 997 (D. Del 2000) (discussing split and collecting cases).

that deposition was specifically taken for the purpose of providing expert testimony at the *Hardeman* trial.

**B.    Defendant's Position**

Plaintiff should not be permitted to play Dr. Portier's trial preservation deposition video from the *Hardeman* trial in lieu of bringing Dr. Portier live. As a preliminary matter, absent consent, depositions can be used at trial in lieu of live testimony only where a witness is "unavailable." *See* Fed. R. Civ. P. 32(a)(4), 32(a)(4)(E); *G.E.J. Corp. v. Uranium Aire, Inc.*, 311 F.2d 749, 755 (9th Cir. 1962) ("Depositions may only be used where the witness is unavailable or where exceptional circumstances necessitate their use. Rule 26(d) contemplates such use and was not intended to permit depositions to substitute at the trial for the witness himself."). Plaintiffs have provided no basis for concluding that Dr. Portier is "unavailable."

The mere fact that Dr. Portier lives in Switzerland does not satisfy that standard. Contrary to Plaintiffs' suggestion, there is no categorical rule in the Ninth Circuit permitting Plaintiffs to play *expert* deposition videos at trial. The only case they cite involved a witness who may not even have been an expert witness at all. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004).[2] Courts in this Circuit have routinely held that neither cost nor inconvenience to a witness (the presumed basis for deeming Dr. Portier unavailable) constitutes exceptional circumstances.[3] Courts have also noted that expert witnesses should not be treated similarly to ordinary fact witnesses for purposes of Rule 32, in light of the fact that they are retained and paid by one party. *See, e.g.*, *Holmes v. Merck & Co.*, No. 2:04CV00608-BES(GWF), 2006 WL 1744300, at *2 (D. Nev. June 22, 2006) ("As the court in *Carter–*

---

[2] *See, e.g.*, *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 963-64 (10th Cir. 1993) (holding that trial court correctly refused to admit prior deposition testimony given lack of "exceptional circumstances" where doctor witness claimed that he was "extremely busy"); *Hegwood v. Ross Stores, Inc.*, No. 3:04-CV-2674-BH (G), 2007 WL 102994, *2-3 (N.D. Tex. Jan. 16, 2007) (finding no "exceptional circumstances" to allow introduction of prior deposition testimony despite doctor's busy schedule, inconvenience to patients, and cost of approximately $10,000 where the amount in controversy was over $300,000).

*Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir.1973), noted, unlike the typical witness whose involvement with the case may depend on the fortuity of his observing a particular event and whose presence at trial is often involuntary, a party ordinarily has the opportunity to choose the expert witness whose testimony he desires and to arrange for the expert to appear and testify at the trial. Furthermore, because a retained expert witness usually has no involvement with the case other than his willingness to review the case and testify as an expert, a party is likely to have the ability to select an expert witness who will or should be available to testify at trial.").

The reasons that prompted the Court to deem Dr. Portier unavailable in *Hardeman* are no longer present. Dr. Portier was allowed to testify by preservation deposition in that case only because of a health issue that prevented him from traveling to the United States at the time. But Dr. Portier has since testified live in the *Pilliod* trial and there is no indication his health would prevent him from attending *Stevick*. Nothing in Rule 32 permits Plaintiffs to select an expert who resides outside the United States, reap the benefits of his opinions, and then selectively claim that he is unavailable to appear for live cross-examination at certain trials simply because of his foreign residence.

Plaintiff's proposal is also highly prejudicial given the nature of Dr. Portier's testimony and the evolving science and regulatory determinations surrounding glyphosate. As this Court knows from its experience in this litigation, new scientific studies regarding glyphosate are published regularly. If Plaintiff can permanently fix Dr. Portier's testimony at a point in time one year prior to the *Stevick* trial, it will be impossible for Monsanto to meaningfully cross-examine Dr. Portier on any additional science or regulatory issues that may arise. *See In re Viagra Prods. Liab. Litig.*, 572 F. Supp. 2d 1071, 1082 (D. Minn. 2008) ("In this MDL matter, it is imperative that the transferor courts retain complete discretion over the ultimate admissibility of [an expert's] testimony . . . [Defendant] must be afforded meaningful opportunity for cross-examination in each individual case."). Indeed, in the *Hardeman* trial alone, Plaintiffs themselves used, including with Dr. Portier, the Zhang meta-analysis published in 2019 on which Monsanto had no prior opportunity for cross-examination. And since that

trial, EPA has issued multiple new statements regarding glyphosate's safety that Monsanto should be permitted to use in the future. Plaintiffs should not be permitted to permanently fix—in an already-outdated, case-specific deposition, no less—the testimony of a now-available witness they have characterized as "important" and the Court has characterized as "largely like the centerpiece of their causation presentation." *See* Jan. 28, 2019 Tr. at 80:1; 81:16-18.

## II.  MOTION TO EXCLUDE DR. SAWYER

### A.  Plaintiffs' Position

Although this issue has been briefed by the parties, see ECF filings 2418, 2559 and 2634, the Court has not yet ruled on Monsanto's Motion to Exclude Plaintiffs' expert Dr. Sawyer, a toxicologist who opines primarily about the way Roundup gets from the bottle to the bone. This issue was raised with the Court at the November 14, 2019 teleconference hearing. At that hearing, the Court stated that although this issue had been briefed once, that it would prefer briefing again focusing on the *Stevick* case in particular.

Accordingly, the following briefing schedule is proposed with the expectation that the Court will be able to rule on this matter in early January:

- December 20, 2019 – Monsanto's moving papers
- December 27, 2019 – Plaintiffs' response
- January 3, 2020 – Monsanto's reply
- To Be Determined – hearing date in early January if the Court requests oral argument on the motion.

### B.  Defendant's Position

Monsanto's position is that Dr. Sawyer should be excluded. The Court has already received substantial briefing on Dr. Sawyer between the prior *Daubert* briefing in *Stevick* and several of the Wave 1 cases. *See* ECF Nos. 2418, 2559, 2634, and 8010. Because Dr. Sawyer's testimony may also be addressed at the potential January 29, 2020 *Daubert* hearing for Wave 1,

Monsanto respectfully submits that the Court could also address his potential testimony in the *Stevick* trial at that date.  Accordingly, Monsanto proposes the following briefing schedule:

- December 27, 2019 – Monsanto's moving papers
- January 3, 2019 – Plaintiffs' response
- January 10, 2020 – Monsanto's reply

### III.   NUMBER OF JURORS TO BEGIN THE TRIAL

#### A.   Plaintiffs' Position

Federal Rule of Civil Procedure 48(a) provides no less than six or no more than twelve jurors shall serve.  In the *Hardeman* case, the Court wisely chose nine jurors.  At the end of the case, there were only six remaining.  Plaintiffs recommend that nine jurors be selected to serve on this jury.

#### B.   Defendant's Position

Monsanto requests twelve jurors for the *Stevick* trial.

### IV.   USE OF TREATING HEALTH CARE PROVIDER DEPOSITIONS AT TRIAL

#### A.   Plaintiffs' Position

The parties agree that the depositions of Plaintiff's treating health care providers, Dr. Kim (oncology), Dr. Sedrak (neurosurgeon) and Dr. Gonzalez (primary care physician), may be played at trial.  The parties have agreed upon the following schedule to exchange deposition cuts for both Phase I and Phase II of these witnesses:

- January 6, 2020 – Plaintiffs' Designations
- January 13, 2020 – Monsanto Counter-Designations
- January 17, 2020 – Plaintiffs' Rebuttal Designations
- January 21, 2020 – Submit designations and testimony to the Court for ruling

**B.    Defendant's Position**

Monsanto agrees that the depositions of Plaintiff's treating health care providers may be played at trial and is amenable to Plaintiff's proposed deadlines for exchanging deposition cuts.

**V.    MONSANTO WITNESS DEPOSITION CUTS USED IN HARDEMAN**

**A.    Plaintiffs' Position**

The parties agree as a general principle that the multiple deposition cuts that Plaintiffs used for Monsanto witnesses during the *Hardeman* trial may be used at the *Stevick* trial. The parties propose the following schedule if any additions or deletions are requested of any of the existing deposition cuts:

- January 13, 2020 – Plaintiffs' Designations
- January 21, 2020 – Monsanto Counter-Designations
- January 27, 2020 – Plaintiffs' Rebuttal Designations
- January 31, 2020 – Submit designations and testimony to the Court for ruling
- February 3, 2020 – Scheduled Pretrial Conference

**B.    Defendant's Position**

Monsanto agrees that deposition videos of Monsanto company witnesses may be played during the *Stevick* trial and is amenable to Plaintiff's proposed schedule. Consistent with the Court's guidance, Monsanto does not believe that the parties should be limited to the exact rulings made in *Hardeman* but agrees the parties should exercise good judgment as to whether and when to seek alterations to the designations.

**VI.    AGREEMENT RE STIPULATIONS AND REQUESTS FOR ADMISSIONS USED IN HARDEMAN**

**A.    Plaintiffs' Position**

The Plaintiffs intend to use the same stipulations and requests for admissions that were read in the *Hardeman* case. Plaintiffs reserve the right to use additional requests for admissions or stipulations in addition to those used in *Hardeman*.

**B.    Defendant's Position**

Monsanto agrees that, as in *Hardeman*, a set of stipulations and requests for admission can be read into the record. Monsanto does not agree that the exact stipulations and requests for admission entered in *Hardeman* should be adopted wholesale into the *Stevick* trial—for example, Monsanto believes the Bayer-Monsanto acquisition total should not be admitted in *Stevick*. But on that issue, the parties should be able to coordinate, with the Court's input, to avoid the need for any witness testimony.

**VII.   DISCLOSURE OF ADDITIONAL GENERAL CAUSATION EXPERT WITNESSES**

**A.    Plaintiffs' Position**

During the October 29, 2108 hearing, the Court clearly stated its intention regarding Monsanto's request to add new general causation experts to the bellwether cases:

> You cannot add general causation experts. If there is an emergency-type situation, if Loralei Mucci has a medical emergency or, you know, something like that, and you want to seek permission to sub somebody in to provide, you know, substantially the same testimony, I will entertain it. I'm not saying I will grant it, but I will entertain it. But the basic answer is, no, I don't think it's appropriate, given everything we've been through already as a team, to be adding general causation experts.

Tr. of Proceedings at 41:8-18 (Oct. 29, 2018)

The Court also ruled as follows in PTO 81 (ECF 2775) 2/18/19, Ruling On Motions In Limine, p. 5, paragraph 2:

> The plaintiffs' motion in limine 2 to exclude new general causation experts and opinions is largely granted. In October 2018, the Court stated, without objection, that only the experts whose opinions were put to the test at Phase 1 would be permitted to present opinions on general causation at trial. *See* Dkt. No. 2121 at 41. Yet in November

2018, Monsanto disclosed reports from specific causation experts that effectively included opinions on general causation that is, that Roundup is simply not a risk factor for NHL. These opinions are in large part excluded. Monsanto's experts may attack the decisions by the plaintiffs' experts to exclude other risk factors, such as hepatitis C. They may also testify that, even if Roundup were a risk factor, it nonetheless would not have caused a particular plaintiff's NHL given the strength of the risk factor and/or the presence of other risk factors. But they may not offer an analysis of the epidemiological literature to support an opinion that Roundup is not a risk factor for NHL, because the offered no such analysis at Phase 1.

The Court then issued PTO 180 on October 7, 2019 that the "limitation [on general causation experts called during the Daubert proceedings in 2017] was intended to apply only to bellwether cases."

Furthermore, permitting Monsanto, now just 2-1/2 months away from the *Stevick* trial, to completely change its general causation case, would prejudice Plaintiffs.

**B.    Defendant's Position**

Monsanto's position is that the parties should be permitted to add new general causation experts in the *Stevick* case. Specifically, Monsanto seeks to add Dr. Beau Bruce, Dr. Glenn Millner, and Dr. David Vearrier as potential general causation experts. Unlike in *Hardeman*, where additional general causation experts did not have a chance to go through vetting prior to trial, Drs. Bruce, Millner, and Vearrier are known quantities. They were disclosed in twenty Wave 1 MDL cases in October 2019. They served reports and have been deposed on their opinions in the Roundup litigation. Plaintiffs will have the opportunity to challenge them through the *Daubert* process prior to trial. Because these experts can be thoroughly vetted by both Plaintiffs and the Court before the February 24, 2020 trial date, Plaintiffs are not prejudiced by the addition of these experts. Moreover, two-and-a-half years have passed since the initial expert disclosures in the federal bellwether cases. And the science surrounding glyphosate has developed and expanded during that time. Monsanto therefore respectfully submits that the disclosure of additional general causation witnesses in *Stevick* is appropriate at this point and requests that the Court allow their addition.

| | | |
|---|---|---|
| 1 | Dated:  December 9, 2019 | By:  /s/ Brian K. Brake |
| 2 | | Brian K. Brake, Esq. (*pro hac vice*) |
| | | bbrake@millerfirmllc.com |
| 3 | | THE MILLER FIRM LLC |
| | | 108 Railroad Avenue |
| 4 | | Orange, VA 22960 |
| | | Tel: 540-672-4224 |
| 5 | | Fax: 540-672-3055 |
| 6 | | |
| | | *Attorneys for Plaintiffs* |
| 7 | | |
| 8 | | |
| 9 | | By:  /s/ Brian L. Stekloff |
| | | Brian L. Stekloff (*pro hac vice*) |
| 10 | | bstekloff@wilkinsonwalsh.com |
| | | Rakesh Kilaru (*pro hac vice*) |
| 11 | | rkilaruwilkinsonwalsh.com |
| 12 | | Tamarra Matthews Johnson (*pro hac vice*) |
| | | tmatthewsjohnson@wilkinsonwalsh.com |
| 13 | | WILKINSON WALSH + ESKOVITZ LLP |
| | | 2001 M St. NW |
| 14 | | 10th Floor |
| | | Washington, DC 20036 |
| 15 | | Tel: 202-847-4030 |
| 16 | | Fax: 202-847-4005 |
| 17 | | *Attorneys for Defendant Monsanto Company* |

- 11 -